UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TERRI L. HOMAN, ) | Case No.  4:08CV1944 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE |
| ) | GEORGE J. LIMBERT |
| v. ) | |
| ) | |
| MICHAEL ASTRUE, ) | **MEMORANDUM OPINION & ORDER** |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI). Electronic Case Filing (ECF) Dkt. #1. Plaintiff contends that the Administrative Law Judge (ALJ) erred in finding her capable of performing limited light work and erroneously discounted her complaints of pain. ECF Dkt. # 17. For the following reasons, this Court AFFIRMS the ALJ's decision.

**I.     PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on February 14, 2006 alleging disability beginning March 1, 2005 due to multiple sclerosis, diabetes, and back pain. Tr. at 60-64, 103, 441-443. The Social Security Administration (SSA) denied Plaintiff's claims and affirmed the denials upon reconsideration. *Id.* at 16, 44-45, 50. Plaintiff requested a hearing before an ALJ, and at the December 7, 2007 hearing, Plaintiff testified and was represented by counsel. *Id.* at 444. A

1

vocational expert also testified. *Id.*

On January 30, 2008, the ALJ denied Plaintiff's application for benefits, finding that while her impairments of diabetes, degenerative disc disease (DDD) of the cervical spine with status post surgery and residual cervical myelopathy, chronic low back pain with DDD of the lumbar spine, depression, and anxiety were severe, they did not meet or equal, individually or in combination, the Listing of Impairments in 20 C.F.R. Part 4, Subpart P, Appendix 1. Tr. at 18. The ALJ found that Plaintiff could perform limited light work existing in significant numbers in the economy. *Id.* at 20.

Plaintiff requested that the Appeals Council review the ALJ's decision but Council denied the request for review, concluding that no basis existed for changing the ALJ's decision. *Id.* at 7-9. Plaintiff filed an appeal to this Court on August 12, 2008 and Defendant answered. ECF Dkt. #s 1, 12. Both parties have filed briefs addressing the merits of the case. ECF Dkt. #s 15, 17. At issue is the ALJ's January 30, 2008 decision, which stands as the final decision. Tr. at 16-26; 20 C.F.R. § 404.984.

## II.    **RELEVANT PORTIONS OF ALJ'S DECISION**

In his January 30, 2008 decision, the ALJ found that Plaintiff had met the insured status requirements through December 31, 2005 and she had not engaged in substantial gainful activity since March 1, 2005, her alleged onset date. Tr. at 18. The ALJ further found that Plaintiff had the severe impairments of diabetes, DDD of the cervical spine, status post surgery and residual cervical myelopathy, chronic low back pain with DDD of the lumbar spine, depression, and anxiety. *Id.* However, he found that none of these impairments, individually or in combination, met or medically equaled the Listing of Impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. *Id.*

The ALJ considered Plaintiff's complaints of disabling pain and found them not entirely credible. Tr. at 21. He also discounted the opinions of nurse practitioners and a treating physician

who had concluded that Plaintiff had extremely limited functional abilities. *Id.* at 24. In concluding that Plaintiff could perform jobs existing in significant numbers in the economy, the ALJ found that Plaintiff had a residual functional capacity (RFC) to perform light work that did not

> involve more than incidental fine manual dexterity, fingering, pinching, and rapid repetitive motion of the upper extremities; or more than occasional stooping, kneeling, crouching, crawling, balancing, and climbing of ladders, ropes, and scaffolds; or any exposure to hazardous situation such as unprotected heights and dangerous machinery; and would allow the claimant to sit or stand at her discretion; and would not involve more than simple, routine, repetitive tasks involving only incidental independent judgment or discretion; no more than incidental changes in work processes, and no piece work production rate pace.

Tr. at 20.

### III  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the following required sequential steps for evaluating entitlement to disability insurance benefits:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).   The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that other jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity.   *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves conflicts, and makes a determination of disability.  This Court's review of such a determination is limited by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).   Therefore, this Court is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).   The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record to support an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).    It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.   *Id.*; *Walters,* 127 F.3d at 532.   Substantiality is based upon the record taken as a whole.  *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.     ANALYSIS**

    **A.     RFC**

Plaintiff asserts that the ALJ lacked substantial evidence to find that she had the RFC to perform limited light work because medical evidence shows that she "has significant exertional restrictions which preclude light work and interfere with sustained activity." ECF Dkt. #15 at 9. Plaintiff cites the medical evidence supporting her assertion and contends that the ALJ erred in "not fully evaluating the effect of Ms. Homan's cervical spine limitations and diabetic neuropathy on her ability to fully use her upper extremities, even with the consideration of a sit/stand option and a restriction to incidental fingering." *Id.* at 10. Plaintiff posits that her combined impairments demonstrate even less than a full range of sedentary work when her lifting, handling and manipulative abilities are properly evaluated. *Id*.

    Light work is defined as:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 1567(b). Social Security Ruling 83-10 further elaborates on the light work definition:

> the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time...

Social Security Ruling 83-10, 1983 WL 31251 at *5. As the reviewing court, this Court must decide if the ALJ's RFC finding was supported by substantial evidence. 42 U.S.C. § 405(g); *Abbott*, 905 F.2d at 922. This Court cannot reverse the decision of the ALJ, even if substantial evidence exists

-5-

in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ. *Walters*, 127 F.3d at 528.

Substantial evidence supports the ALJ's light work determination in this case. Again, although substantial evidence may support a conclusion opposite from that of the ALJ, the standard of review is whether substantial evidence supports the ALJ's determination that Plaintiff could perform light work. In this case, it does.

Substantial evidence supports the ALJ's finding that Plaintiff could perform limited light work prior to her neck surgery in September 2006. In his decision, the ALJ reviewed the medical evidence and other documentation relating to Plaintiff's impairments prior to September 2006 and found that while she suffered from pain and numbness due to DDD of the cervical spine and low back pain, there was no significant neurological compromise found, Plaintiff stated that she had worked odd jobs during this time, and she had engaged in "moderate" daily living activities during this time period. Tr. at 22, citing Tr. at 133-218, 269, 347.

The records support the ALJ's findings. Very few of the early medical notes from Lisbon Community Center reflect complaints of neck and back pain. A November 2002 note indicated that Plaintiff had reported continuing to have cervical discomfort, although she denied any history of injury to the area. Tr. at 172. The nurse's impression was cervical strain/sprain. *Id*. In July 2005, the record shows that Plaintiff complained of neck and back pain but no numbness or tingling. *Id*. at 147. However, the nurse noted that the pain "happens mainly after she has been using the wheelbarrow, lifting heavy objects, putting stone in the driveway and doing a lot of physical labor." *Id*. It was noted that Plaintiff had full range of motion in her thoracic and cervical areas. *Id*. A follow-up appointment a week later revealed that Plaintiff was feeling well. *Id.* at 146. Treatment

notes also show documented performance of odd jobs, including Plaintiff's own report that she worked forty hours per week as a stocker in November 2005 and she stopped only because the "store was completed." *Id*. at 103-104, 450.  Moreover, while her MRIs showed cervical degeneration and cord compression, Plaintiff was found to have no muscle weakness and to be neurologically intact. *Id*. at 138, 140, 142, 147, 160, 161.

The ALJ then discussed Plaintiff's RFC following her neck surgery in September 2006 and substantial evidence supports his finding that Plaintiff could perform limited light work thereafter as well.  The ALJ found that while Plaintiff continued to complain of chronic neck and back pain, as well as numbness, following her major neck surgery, she had an uneventful recovery from the surgery, medical notes indicated improvement, and she remained neurologically intact.  Tr. at 22.  The postoperative examination three weeks after surgery indicated that Plaintiff was neurologically stable. *Id*. at 315.  The six-week postoperative evaluation indicated that Plaintiff had improved.  *Id*. at 312. The four-month follow-up examination on January 31, 2007 showed that Plaintiff complained of muscle stiffness in her neck and increasing lower back pain. *Id.* at 305.  However, Dr. Mroz reviewed the MRI taken of the cervical spine on that same day and indicated that it showed no ongoing cord compression. *Id*.  He also found that she had full motor strength. *Id.*

In addition to findings that Plaintiff was neurologically intact after the surgery, the ALJ further cited a report by one of Plaintiff's caregivers, Terri McNatt-Grace, CRNP at the Lisbon Community Health Center, that Plaintiff had been doing well since her surgery despite some complaints of upper extremity numbness. Tr. at 22, citing  Tr. at 415, 423.  May 8, 2007 notes from Ms. McNatt-Grace also indicate that Plaintiff reported that she was feeling better and was able to be active out in the yard. *Id*. at 415.  In fact, June 6, 2007 notes from Ms. McNatt-Grace shows that Plaintiff came in to

-7-

the Lisbon Health Center complaining of poison ivy after weeding her garden. *Id.* at 413.

The ALJ also cited reports from Dr. Cahall, Plaintiff's treating physician, and Robert Walker, a nurse practitioner, that described Plaintiff as neurologically intact with no signs of weakness. Dr. Cahall indicated on September 28, 2007 that Plaintiff had no musculoskeletal weakness, full range of motion, no instability and no swelling or tenderness. Tr. at 401. He further found that Plaintiff's strength was normal and equal and she had no gross sensory or motor deficits. *Id*. While he noted that Plaintiff had chronic pain, he indicated that the medication Lyrica did help and he was increasing her dosage. *Id*. Mr. Walker noted on November 7, 2007 that Plaintiff had normal muscle strength and grossly intact nerves, but Plaintiff had reported that she had limited range of neck motion, and could lift no more than five pounds and sit no more than ten minutes. *Id.* at 398.

The ALJ additionally addressed the limited functional assessments given by Plaintiff's caregivers, including Mr. Walker, Ms. McNatt-Grace and Dr. Cahall. Tr. at 24. He noted that Mr. Walker gave Plaintiff a note at her March 10, 2006 visit stating that she was unable to work because Plaintiff had requested it. *Id*., citing Tr. at 140. The ALJ indicated that Mr. Walker gave Plaintiff the note entirely based upon Plaintiff's assertion because all of his findings were negative for acute exacerbation of any musculoskeletal complaints. *Id*. The record supports this finding. The clinical notes from that visit indicate that Plaintiff reported to Mr. Walker that she was neurologically unchanged and was still having chronic back pain. *Id*. at 140. However, a physical examination of Plaintiff by Mr. Walker showed normal muscle strength in all four extremities and his clinical impression was chronic back pain. *Id*.

The ALJ also reviewed Ms. McNatt-Grace's assessment that Plaintiff was seriously restricted in her abilities to lift, carry, stand, walk, and sit. Tr. at 24. He disregarded this statement because it was made by a nurse practitioner and because it was entirely inconsistent with her own reports, which showed that Plaintiff's neck pain had improved, she was doing well, and she was becoming more active out in her yard. Substantial evidence supports the ALJ's decision on this issue. Ms. McNatt-Grace had stated on May 18, 2007 that Plaintiff presented to her at Lisbon Medical Center in order to have social security papers completed regarding her functional capacity. *Id*. at 414. Plaintiff also requested a cane. Ms. McNatt-Grace opined that Plaintiff had "severely decreased, impaired functional capacity due to pain and her prior surgeries as well as her paresthesias." *Id*. She further indicated that Plaintiff was unable to lift, push, pull, stand, or sit for any period at all. *Id*.

Even putting aside the ALJ's disregard of Ms. McNatt-Grace's opinion because she is a nurse practitioner, the evidence supports his disregard of this opinion as inconsistent with Ms. McNatt-Grace's reports of Plaintiff. For instance, as pointed out by the ALJ, the January 15, 2007 notes from Ms. McNatt-Grace report that Plaintiff had been doing well since her neck surgery. Tr. at 423. Further, her May 8, 2007 notes indicate that Plaintiff reported that she was feeling better and was able to be active in the yard. *Id*. at 415. In fact, June 6, 2007 notes from Ms. McNatt-Grace show that Plaintiff came into the Lisbon Health Center complaining of poison ivy after weeding her garden. *Id.* at 413. It was noted that she was in no apparent distress but she was standing due to back pain. *Id*.

Finally, the ALJ discussed Dr. Cahall's opinion that found Plaintiff extremely limited in her functional abilities. Tr. at 24. He gave little weight to this assessment of Plaintiff's treating physician because it was inconsistent with the other medical evidence and because Dr. Cahall cited no clinical findings to support such a limited assessment and provided nothing more than vague comments of "x-

-9-

rays, surgical reports" in support. *Id.*

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 ((6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his

case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

In this case, the ALJ correctly noted that Dr. Cahall provided nothing more than the vague comment of "x-rays, surgical reports" on the December 3, 2007 medical source statement which asked him to list the medical findings supporting his assessments. Tr. at 428-429.  Dr. Cahall's medical notes show that in August 2007, Plaintiff presented to him complaining of tingling in her extremities and he found that she had limited range of motion in her neck.  *Id.* at 405-406.  In September 2007, Dr. Cahall's examination showed full range of motion, no instability, no weakness and no gross sensory or motor deficits.  *Id.* at 401.  A November 2007 examination showed that Plaintiff had 5/5 muscle strength, intact nerves and was in no apparent distress, although she related that she had limited range of motion in her neck.  *Id.* at 398.  Since the ALJ provided clear reasons for rejecting Dr. Cahall's very restrictive functional limitations, the Court finds no error by the ALJ with regard to his treatment of Dr. Cahall's opinion.

Based upon the ALJ's proper review of the medical and non-medical evidence, the Court finds that substantial evidence supports his finding that Plaintiff could perform limited light work.

### B. CREDIBILITY DETERMINATION

For primarily the same reasons, the Court finds that the ALJ properly discounted Plaintiff's testimony regarding the severity of her pain and resulting work-related limitations. The social security regulations establish a two-step process for evaluating pain. In order for pain or other subjective complaints to be considered disabling, there must be: (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

When a disability determination cannot be made on the basis of the objective medical evidence, an ALJ must analyze the plaintiff's credibility, considering her statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. § 416.929 and Social Security Ruling 96-7p. Subjective complaints of pain can support a disability claim if objective medical evidence of an underlying condition exists in the record. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992). Other relevant factors that the ALJ must consider include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain. 20 C.F.R. 416.929(c)(3)(i)-(vi); SSR 96-7p. However, an ALJ is not required to accept a plaintiff's own testimony regarding his pain. *Gooch v. Sec'y of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). Since the ALJ has the opportunity to observe the claimant in person, great deference is given to the ALJ's conclusion about the claimant's credibility. *McCoy o/b/o McCoy v. Comm'r of Soc. Sec.,*

81 F.3d 44, 47 (6th Cir. 1995). Nevertheless, substantial evidence must support an ALJ's assessment of a claimant's credibility. *Id.* If the ALJ rejects or discounts the claimant's complaints as not credible, he must clearly state his reasons for doing so. *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).

In the instant case, the ALJ considered the criteria in SSR 96-7p and other medical and non-medical evidence to support his decision to discount Plaintiff's testimony of severe pain and work-related limitations. Tr. at 22-24. Again, the notes indicating that Plaintiff was weeding her garden and performing outside yard work, including using a wheel barrow, lifting heavy objects and putting stone in her driveway, negate a finding that she was as functionally limited or in as much pain as she reported. In addition, Plaintiff indicated that she was performing odd jobs after her alleged disability onset date. While "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity," *Smith v. Califano*, 637 F.2d 968, 971 (3rd Cir. 1981), the activities Plaintiff engaged in appear to be quite inconsistent with her complaints of disabling impairments. In addition, the ALJ properly considered Plaintiff's medications and her daily living activities and noted the reports that Plaintiff was feeling well after her neck surgery and physical examinations indicated that she was neurologically intact, with no signs of instability, swelling or tenderness, and with full ranges of motion and muscle strength. The ALJ also properly addressed the assessments of Ms. McNatt-Grace, Mr. Walker, and Dr. Cahall, and discounted them either due to their inconsistencies with the notes accompanying each assessment or the lack of support for the assessment.

This evidence, both medical and non-medical, provides substantial evidence to support the ALJ's decision to discount Plaintiff's testimony because while the medical evidence showed the existence of an underlying medical condition, it did not confirm the severity of the pain or restrictions alleged by Plaintiff and was not of such severity that it could reasonably be expected to produce

disabling pain.

## **VI.**    **CONCLUSION**

Based upon a review of the record, the Statements of Error, and the law, the undersigned affirms the ALJ's decision denying social security benefits to Plaintiff as substantial evidence supports the ALJ's residual functional capacity determination and decision to discount Plaintiff's allegations of pain and work-related limitations.

Dated: April 28, 2009                                           /s/George J. Limbert
                                                                                GEORGE J. LIMBERT
                                                                                U.S. MAGISTRATE JUDGE